UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.S.,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>　　　　　　　Defendant. | Case No. 8:19-cv-02284-SHK<br><br>OPINION AND ORDER |

　　　　Plaintiff S.S.[1] ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner," "Agency," or "Defendant") denying her application for disability insurance benefits ("DIB"), under Title II of the Social Security Act (the "Act"). This Court has jurisdiction under 42 U.S.C. § 1383(c)(3), and, pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

---

[1] The Court substitutes Plaintiff's initials for Plaintiff's name to protect Plaintiff's privacy with respect to Plaintiff's medical records discussed in this Opinion and Order.

# I.  BACKGROUND

Plaintiff filed an application for DIB on November 20, 2015, alleging disability beginning on September 4, 2013.  Transcript ("Tr.") 145-46.[2]  Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on August 8, 2018, ALJ Susanne M. Cichanowicz determined that Plaintiff was not disabled.  Tr. 15-28.  Plaintiff sought review of the ALJ's decision with the Appeals Council, but review was denied on October 22, 2019.  Tr. 1-3.  This appeal followed.

# II.  STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted).  In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions."  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'"  Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing.") (citation omitted).  A reviewing

---

[2] A certified copy of the Administrative Record was filed on April 15, 2020.  Electronic Case Filing Number ("ECF No.") 14.  Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

2

court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

### III.   DISCUSSION

#### A.   Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098; 20 C.F.R. § 416.920. The claimant carries the burden of proof at steps one

through four, and the Commissioner carries the burden of proof at step five. Tackett, 180 F.3d at 1098.

The five steps are:

> Step 1. Is the claimant presently working in a substantially gainful activity [("SGA")]? If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [SSI]. If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(b).[3]
>
> Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to [SSI]. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(c).
>
> Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to [SSI]. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(d).
>
> Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to [SSI]. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and

---

[3] The Court has also considered the parallel regulations set forth in 20 C.F.R. § 416.920 et seq., when analyzing the ALJ's denial of Plaintiff's SSI application.

4

the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to [SSI]. See 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [SSI]. See 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [SSI]. See id.

Id. at 1098-99.

### B.     Summary Of ALJ's Findings

The ALJ found at step one, that "[Plaintiff] did not engage in [SGA] during the period from her alleged onset date (AOD) of September 4, 2013 through her date last insured of December 31, 2017 (20 CFR 404.1571 et seq.)." Tr. 17. At step two, the ALJ found that "[Plaintiff] had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, and right shoulder impingement syndrome (20 CFR 404.1520(c))." Id. At step three, the ALJ found that "[Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." Tr. 20.

/ / /

In preparation for step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and the following limitations: can lift, carry, push or pull up to 20 pounds occasionally and 10 pounds frequently, however, pushing and pulling with the bilateral upper extremities is limited to frequent; can stand or walk for six hours in an eight-hour workday; can sit for six hours in an eight-hour workday; can occasionally climb ramps and stairs as well as ladders, ropes, and scaffolds, and can occasionally balance, stoop, kneel, crouch, and crawl; bilateral overhead reaching is limited to occasional, and bilateral reaching in all other directions is limited to frequent; and bilateral handling and fingering are limited to frequent.

Id. The ALJ then found, at step four, that "[Plaintiff] was capable of performing past relevant work (PRW) as an Exhibit-Display Representative and a Sales Representative (wholesale trade). This work did not require the performance of work-related activities precluded by [Plaintiff's] [RFC] (20 CFR 404.1565)." Tr. 26. Specifically, the ALJ found that "[Plaintiff] is able to perform the Exhibit-Display Representative and Sales Representative (wholesale trade) jobs as generally and actually performed." Id.

The ALJ, therefore, found that "[Plaintiff] was not under a disability, as defined in the . . . Act, at any time from September 4, 2013, the alleged onset date, through December 31, 2017, the date last insured (20 CFR 404.1520(f))." Tr. 27.

### C.     Issues Presented

In this appeal, Plaintiff raises four issues, including whether the ALJ erred by failing to properly consider: (1) Plaintiff's symptom testimony; (2) the opinion of treating physician Dr. Solemon Hakimi; (3) Plaintiff's mental impairment at step two; and (4) the third-party evidence from Shall Javid. ECF No. 15, Joint Stip. at 2.

The Court finds that the second issue is dispositive, and so it begins and ends its analysis there.

### D. Court's Consideration Of Second Issue

#### 1. Parties' Arguments

Plaintiff argues that the ALJ erred by not properly considering the opinions of her treating physician, Dr. Hakimi. Id. at 26-29. Dr. Hakimi opined that Plaintiff should be limited to "less than full-time work concerning sitting, standing, and walking" and lifting and carrying up to ten pounds. Id. at 26. Plaintiff contends that the ALJ did not consider Dr. Hakimi's "clinical findings and objective signs" supporting his opinions, instead relying on the "generic rationale" that "the record 'shows a history of conservative, routine treatment, aside from shoulder surgery, and many normal and mild exam findings.'" Id. at 27. Plaintiff further argues that the ALJ erred in "fail[ing] to address the fact that Dr. Hakimi is a treating doctor," implicitly giving Dr. Hakimi's opinions less weight because they were "check-the-box" forms, rejecting Dr. Hakimi's opinions for lack of familiarity with the disability guidelines, and for implicitly rejecting Dr. Hakimi's opinions because they were contrary to the opinion of the state agency reviewing physician. Id. at 27-29.

Defendant responds that the ALJ's finding was supported by substantial evidence because the "examination findings during the relevant period did not support such a range of physical and mental problems" opined by Dr. Hakimi. Id. at 32-33. Moreover, Defendant contends that the ALJ properly discredited Dr. Hakimi's opinions for "not being familiar with the Social Security Administration's precise disability guidance," which was "supported by the fact that Dr. Hakimi's opinions were largely untethered to Plaintiff's verified diagnoses and treatment history." Id. at 32. Finally, Defendant notes that "Dr. Hakimi's opinion was contradicted by four other medical opinions by doctors who examined Plaintiff and reviewed her longitudinal records during the relevant period, whereas

7

Dr. Hakimi's opinion was from March 2018, after the expiration of Plaintiff's [date last insured]." Id. at 30.

### 2. Dr. Hakimi's Medical Opinions

Dr. Hakimi completed two separate medical questionnaires about Plaintiff, both of which the ALJ considered. See Tr. 25. On February 16, 2017, Dr. Hakimi completed a "Physical [RFC] Questionnaire," in which he indicated that he treated Plaintiff "as needed." Tr. 377. Dr. Hakimi diagnosed Plaintiff with anxiety, vasculitis, back pain, depression, neck pain, and insomnia, and his prognosis for Plaintiff was "fair." Id. He indicated that Plaintiff's symptoms were back pain and insomnia, and he stated that Plaintiff had "severe low back pain, with left sciatica, persistent, anxiety make[s] it worse." Id. Dr. Hakimi identified Plaintiff's "clinical findings and objective signs" as "[t]he lumbar area is tender, with [left] sciatica, cervical MRI showed neural foraminal stenosis," and he indicated that she had several epidural injections. Id.

With regard to Plaintiff's lumbar spine, Dr. Hakimi indicated that the positive objective signs are that her "paraspinals are tender with spasm." Tr. 378. He found that she had positive straight leg raising test in both her right and left legs, and a reduced range of motion "due to pain." Id. He further noted that she had muscle spasms, sensory loss, reflex changes, tenderness, and impaired sleep. Id. With regard to Plaintiff's cervical spine, Dr. Hakimi indicated that she had a "significant limitation of motion" in her extension, flexion, left and right rotation, and left and right lateral bending. Id. He noted that she had muscle spasms, reflex changes, tenderness, and impaired sleep. Id. Dr. Hakimi also found that Plaintiff had limited functioning in her upper extremities but that she had no atrophy. Tr. 379-80.

Dr. Hakimi indicated that Plaintiff's psychological conditions, including depression and anxiety, affected her physical conditions. Tr. 379. He opined that during a typical workday, Plaintiff's experience of pain or other symptoms would

frequently interfere with the "attention and concentration needed to perform even simple work tasks." Id.

Dr. Hakimi opined that, if placed in a competitive work environment, Plaintiff could only walk two city blocks without resting or experiencing severe pain, she could only sit for 20 minutes at one time before needing to get up, she could only stand for 10 minutes at one time before needing to sit down or walk around, and she could only sit and stand/walk for about two hours in an eight-hour workday. Tr. 380. He further indicated that during an eight-hour workday, Plaintiff would need to walk every 30 minutes, for 15 minutes at a time. Id. He noted that Plaintiff could occasionally climb stairs but she could never twist, stoop (bend), crouch/squat, or climb ladders. Tr. 382. Dr. Hakimi found that Plaintiff could occasionally reach, handle, finger and peel, but she could never push and/or pull. Id. Finally, Dr. Hakimi indicated that Plaintiff's "severe pain of neck and back, with left sciatica" supported his limitations, and her left Tinel sign was positive, indicating signs of carpal tunnel. Id.

On March 13, 2018, Dr. Hakimi completed a second "Physical [RFC] Questionnaire," where he indicated that he treated Plaintiff once every two to three months or when needed. Tr. 635. He diagnosed Plaintiff with "multiple myeloma (cancer), herpes zoster, anxiety, depression, severe headache, neck, [and] invasive blood pressure]" and noted that her prognosis was poor. Id. He listed Plaintiff's symptoms as "severe neck pain, back pain, headaches, general fatigue, with normochromic, normocytic anemia," and he noted that she had "constant severe neck pain, back pain, headaches." Id. Dr. Hakimi identified Plaintiff's "clinical findings and objective signs" as "neck, thoracic, lumbar spine [and] paraspinals are tender [and] spastic, diffuse skin [hepatic] lesions." Id. He further indicated that Plaintiff did not have chemotherapy because "the side effects aggravate her clinical signs and symptoms." Id.

/ / /

9

With regard to Plaintiff's lumbar spine, Dr. Hakimi found that Plaintiff had positive straight leg raising tests in both her left and right legs, as well as sensory loss, reflex changes, tenderness, muscle spasm, muscle weakness, and impaired appetite or gastritis. Tr. 636. With regard to her cervical spine, Dr. Hakimi indicated that she had reduced range of motion in extension, flexion, left and right rotation, and left and right lateral bending. Id.

Moreover, Dr. Hakimi found that Plaintiff's psychological conditions, including depression and anxiety, affected her physical condition. Id. He opined that during a typical workday, Plaintiff's experience of pain or other symptoms would constantly interfere with the "attention and concentration needed to perform even simple work tasks," and she would be incapable of tolerating "even 'low stress' jobs" due to her multiple myeloma. Tr. 637.

Dr. Hakimi opined that, if placed in a competitive work environment, Plaintiff could not walk any city blocks without resting or experiencing severe pain, she could only sit for one hour at one time before needing to get up, and she could only stand for 10 minutes at one time before needing to sit down or walk around. Id. He indicated that she could only sit and stand/walk for about two hours in an eight-hour workday, and he noted that he "noticed progress deterioration." Id. He further opined that during an eight-hour workday, Plaintiff would need to walk every 15 minutes, for 15 minutes at a time. Tr. 638. Dr. Hakimi found that Plaintiff would need to take unscheduled breaks during an eight-hour workday, which would depend on her degree of pain but may be every 30 minutes. Id. He indicated that Plaintiff's legs would need to be elevated with prolonged sitting, and she would need to use a cane or other assistance device "very soon" while engaging in occasional standing/walking. Id.

Dr. Hakimi further opined that Plaintiff could occasionally lift and carry less than 10 pounds, look down, turn her head right or left, and look up, and she could frequently hold her head in a static position. Id. He found that she could

1 occasionally climb stairs and rarely twist, but she could never stoop (bend),
2 crouch/squat, and climb ladders. Tr. 639. And he indicated she could occasionally
3 reach, handle, finger, peel, and operate foot controls, but she could never push
4 and/or pull. Tr. 639-40. Dr. Hakimi noted that his limitations were supported by
5 Plaintiff's "cervical, thoracic, lumbar spine tenderness, spasm, neurological
6 deficits in upper and lower extremities," as well as the seemingly shortened life
7 span of patients with multiple myeloma. Tr. 639. Finally, Dr. Hakimi opined that
8 Plaintiff would not be able to work. Tr. 638.

### 3. ALJ's Consideration Of Dr. Hakimi's Opinions

The ALJ gave little weight to Dr. Hakimi's "check-the-box-forms." Tr. 25. The ALJ discussed Dr. Hakimi's findings regarding Plaintiff's limitations, including that he limited Plaintiff to "a less than sedentary exertional level" and opined that Plaintiff's symptoms would interfere with her attention and concentration. Id. The ALJ, however, found that Dr. Hakimi's opinions were "not consistent with the medical evidence record as a whole, which documents [Plaintiff's] conditions but shows a history of conservative, routine treatment, aside from the shoulder surgery, and many normal and mild exam findings." Id. The ALJ further indicated that "as evidenced by the opinion, [Dr. Hakimi] is not familiar with the Social Security Administration's precise disability guidelines." Id.

### 4. Standard To Review ALJ's Analysis

There are three types of medical opinions in Social Security cases: those from treating physicians, examining physicians, and non-examining physicians. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

11

1 substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871
2 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).

3     "'To reject [the] uncontradicted opinion of a treating or examining doctor,
4 an ALJ must state clear and convincing reasons that are supported by substantial
5 evidence.'" Id. (quoting Ryan v. Comm'r Soc. Sec. Admin., 528 F.3d 1194, 1198
6 (9th Cir. 2008)). "This is not an easy requirement to meet: 'the clear and
7 convincing standard is the most demanding required in Social Security cases.'"
8 Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting Moore v. Comm'r
9 Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).

10     "'If a treating or examining doctor's opinion is contradicted by another
11 doctor's opinion, an ALJ may only reject it by providing specific and legitimate
12 reasons that are supported by substantial evidence.'" Trevizo, 871 F.3d at 675
13 (quoting Ryan, 528 F.3d at 1198). "This is so because, even when contradicted, a
14 treating or examining physician's opinion is still owed deference and will often be
15 'entitled to the greatest weight . . . even if it does not meet the test for controlling
16 weight.'" Garrison, 759 F.3d at 1012 (quoting Orn v. Astrue, 495 F.3d 625, 633
17 (9th Cir. 2007)). "'The ALJ can meet this burden by setting out a detailed and
18 thorough summary of the facts and conflicting clinical evidence, stating his
19 interpretation thereof, and making findings.'" Trevizo, 871 F.3d at 675 (quoting
20 Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

21     **5.    ALJ's Decision Is Not Supported By Substantial Evidence**
22     Here, as an initial matter, the Court finds that the ALJ did not specifically
23 find that Dr. Hakimi's opinions were contradicted by the opinion of another
24 doctor. As discussed above, the ALJ found that Dr. Hakimi's opinions were "not
25 consistent with the medical evidence record as a whole" and reflected a lack of
26 familiarity of the disability guidelines. Tr. 25. The ALJ, however, did consider and
27 discuss other medical opinions that were not entirely consistent with Dr. Hakimi's
28 opinions, and, therefore, the Court finds that the specific and legitimate standard

applies here. See Trevizo, 871 F.3d at 675. The ALJ's reasons for rejecting Dr. Hakimi's opinions, however, fail to meet even this lower burden for the following reasons.

In assigning little weight to Dr. Hakimi's opinions,[4] the ALJ first reasoned that his assessments were inconsistent with the medical record as a whole, specifically Plaintiff's conservative, routine treatment and normal or mild exam findings. Tr. 25. This rationale fails, because the ALJ selectively relied on only portions of the record to develop these conclusions, while ignoring other material evidence that supports a contrary conclusion. See Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding an ALJ cannot selectively rely on some entries in a plaintiff's records while ignoring others).

First, the record does not support the ALJ's finding that Dr. Hakimi's assessments are contradicted by Plaintiff's "conservative, routine treatment, aside from the shoulder surgery." Tr. 25. In discussing Plaintiff's treatment, the ALJ indicated that Plaintiff had shoulder surgery, which appears to have improved Plaintiff's right shoulder, and "some lumbar epidural steroid injections" in September 2015, March 2016, and April 2016. Tr. 22-23. The record, however, reflects that Plaintiff received approximately eight epidural steroid injections to her back during the relevant period. Tr. 251-52, 313-17, 323, 337, 350-53, 357-60, 366, 274, 400. These epidural steroid injections were preceded by lesser treatments that failed to alleviate her back pain, including activity modification, physical therapy, massages, and over-the-counter anti-inflammatory medication. Tr. 313,

---

[4] As discussed above, Dr. Hakimi provided two medical assessments. The first assessment is dated February 16, 2017, prior to the date Plaintiff is considered last insured for disability benefits. The second assessment is dated March 13, 2018, less than three months after Plaintiff's date last insured. The ALJ appears to have considered both opinions, and both are relevant to evaluating Plaintiff's disability and functional limitations. See Galeck v. Berryhill, No. 2:18-cv-00131-JDE, 2018 WL 4961651, at *6 (C.D. Cal. Oct. 12, 2018) (noting that "[t]he Ninth Circuit has made clear that 'medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition'") (quoting Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988)).

365. Plaintiff also took narcotic pain medication for her back pain, including hydrocodone (Norco) and Valium.  Tr. 311-12, 323, 354-56, 365-66.  The Court finds that such treatment, which increased in severity, is not conservative or routine.  See, e.g., Silva v. Comm'r of Soc. Sec. Admin., No. SA CV 18-1244-E, 2019 WL 653089, at *10 (C.D. Cal. Feb. 15, 2019) (rejecting ALJ's finding of "conservative treatment" where the plaintiff engaged in "physical therapy, narcotic pain medication and multiple epidural injections").

      Second, the record does not support the ALJ's finding that Plaintiff's exam findings contradict Dr. Hakimi's assessments.  The ALJ reviewed Plaintiff's medical records, and despite acknowledging "some findings of concern," such as skin lesions and an MRI of the cervical spine with positive findings, the ALJ determined that the record shows "many normal and mild exam findings."  Tr. 22-23.  In reaching this conclusion, however, the ALJ ignores or otherwise dismisses medical records and treatment notes that indicate Plaintiff's impairments were more serious.  Id.  For example, Plaintiff tested positive for straight leg raise tests, both on her left and right legs, on several occasions in 2015 and 2016.  Tr. 287, 311, 351, 354, 369.  Plaintiff's exams further indicate tenderness and decreased sensation, strength, and range of motion in her left upper and lower extremities and lumbar and cervical spines throughout the relevant period.  Tr. 287, 293, 307, 311, 327, 351, 354, 369, 401, 627.  And, in addition to the MRI that found moderate right neural foraminal stenosis and moderate to severe left neural foraminal stenosis in Plaintiff's cervical spine, it also appears that MRIs performed in April 2015 found Plaintiff had an impingement of the supraspinatus junction with tendonitis in her left shoulder and multilevel disc loss in her lumbosacral spine.  Tr. 291, 296-97.  Taken together, Plaintiff's exam findings, which support her diagnoses of degenerative disc disease, spinal stenosis, and sciatica in the record, similarly support Dr. Hakimi's findings that Plaintiff had severe neck and back pain with left

sciatica requiring functional limitations.  Tr. 296-97, 348, 374, 377, 382, 385, 400, 635, 639.

Furthermore, the ALJ largely disregarded exam findings that Plaintiff experienced blood and skin issues during the relevant period.  Tr. 19, 23.  In 2017, Plaintiff had skin lesions in her bilateral upper extremities and bleeding under her skin.  Tr. 385, 400-02, 656.  Plaintiff's medical record also reflects that she was initially diagnosed with multiple myeloma, but a later diagnosis indicated that, at the least, she had smoldering multiple myeloma.  Tr. 385, 430-32, 438, 642.  Finally, as for Dr. Hakimi's assessments regarding Plaintiff's mental limitations, the ALJ similarly only considered Plaintiff's "many normal Mental Status Examinations" in the record and failed to address findings in the record that Plaintiff had anxiety and depression, for which she took medication.  Tr. 19, 24, 293, 337-40, 372-73, 375, 400, 648-49, 662, 668-69.  Accordingly, because the ALJ did not properly consider or discuss the aforementioned evidence that is consistent with the limitations assessed by Dr. Hakimi, the ALJ's rejection of Dr. Hakimi's opinions is not supported by substantial evidence.

The ALJ's remaining reason for assigning Dr. Hakimi's opinions little weight—his lack of familiarity with the Administration's "precise disability guidelines"—is also rejected.  An ALJ may consider a physician's familiarity with the Administration's "disability programs and their evidentiary requirements" when evaluating a medical opinion.  20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6).  In this case, however, the ALJ does not provide any factual support for her conclusory statement that Dr. Hakimi's opinions reflect a lack of familiarity of the disability guidelines.  See Tr. 25.  Rather, the ALJ found that Dr. Hakimi limited Plaintiff to "a less than sedentary exertional level" and assessed a variety of functional limitations, including limitations in her ability to sit and stand/walk during an eight-hour workday, her capacity to maintain concentration and handle stress, and postural limitations about climbing, reaching, handling, fingering, pushing, and

pulling. Id. Such functional limitations reflect some familiarity and understanding of the Administration's guidelines. As such, the Court finds that the ALJ's reason for rejecting Dr. Hakimi's assessments for lack of familiarity with the disability guidelines is not supported by substantial evidence.

Accordingly, for the reasons discussed above, the Court finds that the ALJ's rejection of Dr. Hakimi's opinions was not supported by specific and legitimate reasons or substantial evidence in the record. As such, the Court finds that remand for further proceedings is appropriate here.

## IV. CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). See Garrison, 759 F.3d at 1009 (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing") (citation and internal quotation marks omitted).

IT IS SO ORDERED.

DATED: 9/28/20

_____
HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge